1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6
7

CARRIE S., NEXT OF KIN FOR MATHEW
S.,

                   Plaintiff,

8

     v.

9
10

COMMISSIONER OF SOCIAL
SECURITY,

                   Defendant.

11

Case No. 3:20-cv-05512-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14

     Plaintiff has brought this matter for judicial review of defendant's termination of her late husband ("Claimant")'s disability insurance ("DIB") benefits.

15
16
17

     The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

18

I.      <u>ISSUES FOR REVIEW</u>

19
20

1. Did the Administrative Law Judge ("ALJ") properly evaluate medical opinion evidence?

21

2. Did the ALJ properly evaluate Claimant's subjective testimony?

22
23

3. Did the ALJ properly evaluate lay testimony from Plaintiff regarding Claimant's symptoms?

24

4. Should this matter be remanded for an award of benefits?

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

## II.    BACKGROUND

While his appeal was pending before the Appeals Council, Claimant died at age 42, on October 17, 2019, leading to his wife's substitution as Plaintiff. AR 8, 10 (death certificate).

On June 28, 2012, Claimant filed an application for DIB, alleging therein a disability onset date of June 30, 2011. Administrative Record ("AR") 136. Claimant's application for DIB was denied upon official review and upon reconsideration. AR 113, 117. A hearing was held before Administrative Law Judge ("ALJ") Robert P. Kingsley on July 31, 2014. AR 141. On October 8, 2014, ALJ Kingsley issued a decision finding that Claimant was disabled as of the alleged onset date. *Id.*

The Social Security Administration ("Administration") initiated a continuing disability review process in December 2016. AR 486. On initial review, the Administration found Claimant was no longer disabled as of January 19, 2017. AR 144. On reconsideration, the Administration amended the date of disability cessation to February 13, 2018. AR 163. A hearing was held before ALJ Allen G. Erickson on November 13, 2018. AR 46. On February 19, 2019, ALJ Erickson issued a decision finding Claimant was no longer disabled. AR 18-33. On March 27, 2020, the Appeals Council denied review, making ALJ Erickson's decision the final decision of the Commissioner. AR 1. Plaintiff seeks review of the denial of her deceased spouse's benefits, in this Court.

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

1 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a
2 reasonable mind might accept as adequate to support a conclusion." *Biestek v.*
3 *Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

4 IV.   DISCUSSION

5 At the time of the Comparison Point Decision ("CPD") in 2014, the ALJ found that
6 Claimant had the severe, medically determinable impairments of degenerative disc
7 disease of the cervical spine, status post-anterior cervical discectomy and fusion,
8 degenerative disc disease of the lumbar spine, and obstructive sleep apnea. In the
9 decision at issue here, the ALJ found that Claimant had the severe, medically
10 determinable impairments of cervical spine degenerative disc disease, degenerative
11 joint disease, status post-surgeries, major depressive disorder, and generalized anxiety
12 disorder. AR 122. Based on the limitations stemming from these impairments, the ALJ
13 found that Claimant could perform a reduced range of sedentary work. AR 26. Relying
14 on vocational expert ("VE") testimony, the ALJ found at step four that Claimant could not
15 perform his past relevant work, but could perform other sedentary jobs at step five of the
16 sequential evaluation; therefore, the ALJ determined at step five that Claimant was not
17 disabled. AR 31

18 A.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

19 Plaintiff contends that the ALJ erred in evaluating the medical opinion of treating
20 physician Robert Lang, M.D., as well as the opinions of examining psychologist Peter
21 Weiss, Ph.D. and physical therapist Lisa Scheuffele, P.T. Dkt. 16, pp. 3–9. Plaintiff
22 summarizes much of the rest of the medical evidence but fails to make any substantive
23 argument about the ALJ's evaluation of any opinions or impairments other than those
24 discussed herein. Dkt. 16, pp. 9–13. The Court will not consider matters that are not

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

1  "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v.*

2  *Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting

3  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). The

4  Court thus will only consider the ALJ's evaluation of the opinions of the three

5  professionals specifically raised.

6      1.  Applicable Law

7      In determining whether a cessation of benefits is warranted, the ALJ follows a

8  seven-step analysis set forth in 20 CFR 416.994(b)(5)(i)–(viii).

9      Until recently, case law in the Ninth Circuit provided that "'a prior ruling of

10  disability can give rise to a presumption that the disability still exists.'" *Lambert v. Saul*,

11  980 F.3d 1266, 1270 (9th Cir. 2020) (quoting *Patti v. Schweiker*, 669 F.2d 582, 586 (9th

12  Cir. 1982)). Last year, the Ninth Circuit in *Lambert* held that in benefits termination

13  cases, a prior finding of disability will not entitle the claimant to a presumption of

14  continuing disability. *Lambert*, 980 F.3d at 1268. However, an ALJ's decision regarding

15  medical improvement must still be supported by substantial evidence. *Attmore v. Colvin*,

16  827 F.3d 872, 874 (9th Cir. 2016).

17      The ALJ must provide "clear and convincing" reasons for rejecting the

18  uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*,

19  871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

20  1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is

21  contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In

22  either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth

23  Circuit law, opinions from non-examining medical sources that contradict a treating

24

25

physician's opinion will trigger the "specific and legitimate reasons" standard of review. *See, e.g.*, *Revels*, 874 F.3d at 662 (requiring only specific and legitimate reasons where treating doctor's opinion was "contradicted by the findings of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to some extent, the opinion of Dr. Ruggeri, the hand specialist").

Physical therapists are "other sources," and their opinions may be given less weight that those of "acceptable medical sources." *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996) ("acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists); *see also* 20 C.F.R. § 404.1527, § 416.913(d). Nevertheless, evidence from such "other sources" "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527, § 416.913(d). Given the fact that they are not acceptable medical sources, however, evidence from these "other sources" may be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

2. Opinion of Dr. Lang

The ALJ erred in discounting Dr. Lang's opinion because the reasons given are not specific or legitimate -- and the reasons are not supported by substantial evidence.

Robert Lang, M.D., served as Claimant's treating physician from 2012 through the date of the most recent ALJ decision. *See* AR 714–29, 968–75, 1055–1120, 1275–1336, 1398–1402, 1409–12. In a statement dated June 20, 2018, Dr. Lang opined that Claimant would be unable to sit, stand or walk for more than two hours in an eight-hour

day, that Claimant could stand for ten minutes at a time before needing to sit or walk around, due to lower back pain, and that Claimant could sit for fifteen minutes at a time before needing to stand or change positions. AR 1409. Dr. Lang went on to state that Claimant would need to take unscheduled breaks, including by walking around for 15 minutes every 90 minutes. *Id.* Finally, Dr. Lang opined that Claimant would be unable to perform full-time sedentary work. *Id.*

In discounting this opinion, ALJ Erickson reasoned that (1) these limitations were internally inconsistent, because Claimant would not be able to walk for 15 minutes if he could only stand for 10; (2) Dr. Lang failed to explain the effect of surgeries Claimant underwent in 2015 and improvements thereafter; and (3) the limitations were inconsistent with those expressed in other medical source opinions. AR 31.

With respect to the ALJ's first reason, the ALJ noted that "the claimant cannot walk for 15 minutes if he can stand for just 10 minutes." AR 31. As discussed above, Dr. Lang opined that, due to lower back pain, Claimant could stand for only 10 minutes at a time before needing either to sit down *or walk around*, but would need to take 15-minute walks every 90 minutes. There is no inconsistency between these limitations, and the Commissioner's brief presents no argument supporting a finding of inconsistency.

The only plausible explanation for the ALJ's finding was that he misconstrued Dr. Lang's opinion to be that Claimant would be unable to either stand or walk for more than 10 minutes at a time, which would be inconsistent with the opinion that Claimant needed to walk around for 15 minutes. Yet the form completed by Dr. Lang did not ask how long Claimant could continuously stand and/or walk before needing a break—instead, it merely sought information regarding how long Claimant could stand before needing to

walk or sit down. Thus, Dr. Lang's opinion that after 10 minutes of standing Claimant would need to change positions, either by sitting or walking, is not inconsistent with the opinion that Claimant would need to walk around for 15 minutes every 90 minutes.

As to the ALJ's second reason, an ALJ need not accept a medical opinion that is brief and conclusory when the ALJ faces conflicting evidence regarding the claimant's condition. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Yet even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record—especially the physician's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding ALJ erred in finding treating opinion "conclusory" and supported by "little explanation," where ALJ "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain"); *Revels*, 874 F.3d at 663 (finding ALJ erred in rejecting treating physician's opinion as supported by "little explanation," where record included treatment notes supporting the opined limitations).

Here, the ALJ did not discuss or consider Dr. Lang's longitudinal treatment notes, which tended to support the limitations assessed in his report even after the 2015 surgeries. Between June 2017 and October 2017, Dr. Lang repeatedly found that Claimant's neck had abnormal range of motion and tenderness with diminished sensation and reflexes across both of his arms and hands. AR 1278, 1281, 1285, 1288, 1290-93, 1297, 1302, 1308, 1311, 1400. On October 31, 2017, Dr. Lang performed a re-exploration of Sager's posterior cervical fusion C6-C7, removal of posterior segmental instrumentation, and reinforcement of cervical fusion with allograft and bone morphogenetic proteins. AR 1313-16. Dr. Lang noted that Mathew S. "has continued to have left arm pain and intermittent weakness in his right arm. His physical exam

showed diminished triceps reflexes and diminished sensation, lateral radial left arm." AR 1313–14.

After the 2017 surgery, Dr. Lang found that Claimant continued to exhibit left-sided pain with testing the left deltoid and triceps, that his grip strength was abnormal with his left hand weaker than his right, and that his upper extremity reflexes were unequal, with his left side more diminished than his right. AR 1285. Between November 2017 and February 2018, Dr. Lang continued to find that Claimant had abnormal posture with his head forward of his sternum, limited range of motion in his neck, diminished pinprick sensation on his left arm and hand, and unbalanced reflexes between his left and right arms. AR 1278, 1281, 1285, 1400.

The ALJ's evaluation of Dr. Lang's opinion omitted any discussion of these notes.

Addressing the ALJ's third reason, the existence of a conflict among the medical opinions of Drs. Lang, Leinenbach and Irwin, is not, in itself, a reason for choosing one doctor's opinion over the others; rather, it only establishes an issue the ALJ must resolve. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). As stated above, applicable Ninth Circuit precedent allows an ALJ to reject the controverted opinion of an examining doctor by identifying "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (citing *Andrews*, 53 F.3d at 1043). Stating only that a conflict exists, without more, is not a specific and legitimate reason to reject the opinion of a treating source.

Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

at 1115. An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, the ALJ's error was not harmless. If the ALJ had properly considered the opinions of Dr. Lang, the ALJ may have incorporated limitations from these opinions in making a determination as to Claimant's residual functional capacity. If the ALJ incorporated such limitations, in turn, the continuing disability determination may have changed. Accordingly, the ALJ's error was not harmless and requires reversal.

3.  Opinion of Dr. Weiss

The ALJ did not address Dr. Weiss's finding regarding sustained concentration and persistence, and the ALJ failed to provide reasoning that would reconcile this finding with the ALJ's ultimate decision; therefore the ALJ's reasoning and decision on this point is insufficiently developed and cannot effectively be reviewed by this Court.

Peter A. Weiss, Ph.D., examined Claimant on October 11, 2017; Dr. Weiss opined that Mathew S. suffered from moderate, recurrent major depressive disorder with anxious distress. AR 1267-1272. Performing a mental status examination, he noted that although Claimant's performance was adequate or good in most categories, his attention and concentration were less than adequate. Dr. Weiss stated that Claimant:

> . . . does appear to have some social impairment but he appears to
> maintain a few positive interpersonal relationships. His sustained

concentration and persistence appear markedly impaired by his depression, as exemplified by his self-report of limited daily activities outside the home and his performance on the cognitive portion of the mental status examination. His overall adaptive impairment due to his Major Depressive Disorder appears moderate.

AR 1270.

The ALJ stated that he found Dr. Weiss's opinion "persuasive," and did not single out any portion of the opinion for discounting. However, Plaintiff notes that the ALJ did not adopt Dr. Weiss's finding regarding sustained concentration and persistence— where Dr. Weiss opined that these "appear[ed] markedly impaired," the ALJ found that Claimant had only a moderate limitation in this area. *See* Dkt. 19, p. 4; AR 25, 1270.

The Commissioner avers that the ALJ adequately addressed Dr. Weiss's opinion in Claimant's residual functional capacity determination by "limiting the claimant to following short and simple instructions involving routine tasks, but 'not in a fast-paced, production-type environment.'" Dkt. 17, p. 12 (citing AR 26). However, the ALJ did not explicitly connect this limitation to his evaluation of Dr. Weiss's opinion, and this Court will not affirm the ALJ's decision based on speculation that such a connection was implied.

"Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)).

1

2    4.  Opinion of P.T. Scheuffele

3        Lisa Scheuffele, P.T., was Claimant's treating physical therapist from 2014 on,

4    assisting in his recovery after a series of neck and shoulder surgeries in 2014 and 2015.

5    At the time of Claimant's discharge from physical therapy, she stated that Claimant had

6    "plateaued in his progress for his cervical spine condition," and that his "[g]uarding

7    muscle tone is decreased, but the muscles fatigue easily with light exercises and

8    [activities of daily living], which causes them to tighten up." AR 1581.

9        Ms. Scheuffele also stated that "[e]xercises involving reaching overhead, looking

10   up, or looking down for more than a few minutes increases pain and tension," he

11   reported "his [activity] level has remained the same," and that his "score for the Neck

12   Disability Index improved slightly from complete disability to severe disability." *Id.* In her

13   opinion, Claimant's ability to carry, move, and handle objects remained between 40

14   percent and 60 percent impaired, and he was "not able to carry out a full time job, either

15   sedentary or active." AR 1581. The ALJ did not discuss these statements in his

16   decision.

17       Physical therapists are "other sources" whose testimony may be discounted if the

18   ALJ "gives reasons germane to each [source] for doing so." *Molina*, 674 F.3d at 1111

19   (citations omitted). However, an ALJ may not reject significant probative evidence

20   without explanation and must state reasons for disregarding such evidence. Flores v.

21   Shalala, 49 F.3d 562, 570–71 (9th Cir. 1995).

22       The Commissioner asserts that even if an ALJ errs by not discussing evidence,

23   the error is harmless where the same reasons the ALJ gave for rejecting other, similar

24   evidence apply equally to the unaddressed evidence. Dkt. 17, p. 14 (citing *Molina*, 674

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

F.3d at 1121–22, and *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The Commissioner argues that, because the limitations discussed in Ms. Scheuffele's notes were similar to those assessed by Dr. Lang, the reasons given by the ALJ for rejecting Dr. Lang's opinion apply equally to Ms. Scheuffele's notes. *Id.* But the source's statements are not identical, and, as discussed above, the ALJ failed to give specific and legitimate reasons for rejecting Dr. Lang's opinion. Thus, the ALJ's failure to address Ms. Scheuffele's statements was not harmless and requires reversal.

B. Whether the ALJ Properly Evaluated Claimant's Symptom Testimony

Plaintiff contends that the ALJ improperly discounted Claimant's subjective symptom testimony. Dkt. 16, pp. 13–16. As discussed below, the ALJ's adverse credibility finding regarding Claimant's subjective symptom testimony was not supported by substantial evidence, and this was harmful error.

To reject a claimant's subjective complaints, the ALJ's decision must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. "[B]ecause subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone," the ALJ may not discredit a subjective description "solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1   Claimant testified he had difficulties with pushing and pulling anything heavier

2   than a gallon of milk, and that to lift a gallon of milk he would have to lift and carry it

3   close to his chest to avoid neck pain. AR 83. This neck pain also required him to be

4   careful with how his neck is turning or facing; this prevented him from turning his head

5   and necessitated extra care when lifting his head up. AR 83, 89. Claimant testified that

6   his neck issue causes him constant pain, headaches, and nausea. AR 66.

7   Claimant also testified that he could only walk a few blocks before he would need

8   to stop, he can only stand for 10 minutes at a time before his neck starts to hurt -- he

9   stated that "[s]tanding's worse" -- and he cannot squat down or bend over. AR 84, 89.

10  Claimant testified that he has shooting pains in his arms, constantly drops items and

11  knocks objects over. AR 66-67, 84. Claimant also stated, Dr. Lang instructed him to

12  keep his legs elevated due to his heart and leg conditions. AR 80. Claimant testified he

13  could not mow the grass, vacuum, clean, cook, or wash dishes due to pain symptoms in

14  his neck and numbness on his fingers; even filling out paperwork and holding items

15  caused his hands to go numb. AR 77–78. Claimant testified that, on an average day, he

16  usually does not leave his room and spends his time laying down in bed due to his

17  discomfort. AR 78–79.

18  Regarding mental health symptoms, Claimant testified that he has depression

19  and anxiety and that he takes medication for these conditions, but such symptoms

20  remained a "constant hurdle" and had "gone downhill" after his most recent surgery and

21  a series of concussions. AR 73-75, 81. Claimant testified that his medications caused

22  side effects of fatigue and insomnia. AR 87–88. He also stated that he suffered from

23  fatigue due to an HIV infection. AR 71.

24

25

1    In not fully crediting Claimant's subjective symptom testimony, the ALJ reasoned

2    that the objective medical evidence did not support the degree of limitation alleged, and

3    instead pointed to medical improvement to the level where Claimant was no longer

4    disabled. AR 29.

5    An inconsistency with the objective evidence may serve as a clear and

6    convincing reason for discounting a claimant's testimony. *Regennitter v. Comm'r of*

7    *Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ's decision may not

8    reject a claimant's subjective symptom testimony "solely because the degree of pain

9    alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748,

10   749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying

11   rule to subjective complaints other than pain).

12   Here, the ALJ pointed to physical and psychological consultative examination

13   findings from Drs. Leinenbach and Weiss, respectively, indicating that Claimant could

14   sustain a full time work schedule on a regular and continuing basis, as well as physical

15   examination findings and treatment notes that reflected "no worsening, and

16   improvement since the 2015 surgery." The ALJ stated that "the claimant's pain never

17   seems to be at severely high levels, and he has had a good recovery since the last

18   surgery." AR 29. As for psychiatric symptoms, the ALJ noted that they were "generally

19   stable on medication, with no impact on mental functioning." *Id.*

20   These examinations and reports from Drs. Leinenbach and Weiss do not, on

21   their own, contradict Claimant's subjective testimony. Notably, the physical and

22   psychological consultative examinations occurred prior to Claimant's most recent

23   surgery before the hearing. AR 1265, 1270.  The physical examination findings do not

24

25

1    account for Claimant's continuing pain symptoms in his lumbar and cervical spine. AR

2    1265.

3         As discussed above, the ALJ also omitted any discussion of Dr. Weiss's finding

4    that Claimant had marked limitations in sustained concentration and persistence. AR

5    29. While the Commissioner asserts that the ALJ validly discounted this finding as

6    inconsistent with the rest of Dr. Weiss's opinion, their argument is unpersuasive

7    because the ALJ did not address this finding at all. In addition, because the date of Dr.

8    Weiss's opinion was prior to Claimant's most recent surgery, it would have been

9    impossible for Dr. Weiss to give an opinion to contradict Claimant's testimony about

10   worsening psychological symptoms subsequent to surgery. The surgery had not

11   happened yet -- the most recent surgery was performed after Dr. Weiss gave his

12   opinion. AR 73.

13        The ALJ failed to discuss medical evidence that did not support his ultimate

14   decision -- which included surgeries on Claimant's right metacarpophalangeal joint;

15   knee surgery; evidence Claimant was required to keep his legs elevated, and diagnoses

16   of synovitis, spondolysis, and other nerve conditions. *See, e.g.* AR 1464, 1477–78,

17   1482, 1538. This selective summary of the medical evidence that supported one

18   conclusion while omitting evidence that did not support such a conclusion, shows the

19   ALJ erred by cherry-picking. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)

20   (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in

21   context of "diagnoses and observations of impairment").

22

23

24

25

1

C.  <u>Whether the ALJ Properly Evaluated Lay Witness Statements</u>

2

Finally, Plaintiff avers that the ALJ erred by failing to evaluate lay witness

3 testimony from Claimant's wife—the Plaintiff in this action. Dkt. 16, pp. 16–17. The

4 Plaintiff's argument is persuasive; in this case, the ALJ's discounting of lay witness

5 testimony was not supported by substantial evidence.

6

Lay testimony regarding a claimant's symptoms "is competent evidence that an

7 ALJ must take into account," unless the ALJ "expressly determines to disregard such

8 testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236

9 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the

10 specific record as long as "arguably germane reasons" for dismissing the testimony are

11 noted, even though the ALJ does "not clearly link his determination to those reasons,"

12 and substantial evidence supports the ALJ's decision. *Id.* at 512.

13

If the ALJ has provided proper reasons to discount the lay testimony in another

14 aspect of the written decision, such as within the discussion of the claimant's testimony,

15 the lay testimony may be considered discounted properly even if the ALJ fails to link

16 explicitly the proper reasons to discount the lay testimony to the lay testimony itself. *See*

17 *Molina*, 674 F.3d at 1121 (quoting *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)).

18

In a third-party function report dated November 5, 2018, Plaintiff stated that due

19 to Claimant's neck and back pain, he could not stand or walk for more than 5 to 10

20 minutes without having to sit or lay down, and could sit in a chair for 10 to 15 minutes at

21 a time before he would need to lay down due to his pain symptoms. AR 569–70. Plaintiff

22 stated that Claimant had to lay down on multiple occasions per hour throughout the day

23 due to his pain symptoms and to relieve pressure from his neck, which needed constant

24

25

1   support. AR 571. Plaintiff stated that if Claimant sat or stood for a couple of hours, he

2   would be bed-ridden for the next couple of days. AR 571.

3          Plaintiff stated that Claimant could only go grocery shopping for 10 to 15 minutes

4   before he would need to sit or lay down in order to relieve his back and neck pain. AR

5   569. Plaintiff stated that on a lot of occasions while out walking, Claimant's legs and

6   knees would give out. AR 570. Plaintiff stated that if Claimant stood at the bathroom

7   sink to shave for 5 minutes, he would need to lay down and ice his lower back to relieve

8   the pain. AR 570. Plaintiff stated that Claimant was unable to put dishes away due to

9   the nerve damage in hands and dropping things. AR 571.

10         Plaintiff stated that Claimant had numbness in two of the fingers on his left hand

11  and that he had issues with dropping items, and he had a torn ligament on his right

12  thumb which made it difficult for him to hold onto things. AR 570. Finally, she stated that

13  Claimant was depressed, did not often leave the house, and was withdrawn from friends

14  and family. *Id.*

15         The ALJ did not address the Plaintiff's lay witness statement in his decision;

16  therefore, no reasoning exists for this Court to review. "Long-standing principles of

17  administrative law require us to review the ALJ's decision based on the reasoning and

18  factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit

19  what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security*

20  *Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S.

21  194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)).

22          The ALJ's decision regarding lay witness evidence is not supported, and the

23  error was harmful.

24

25

1    D.  Remand for Award of Benefits

2        Plaintiff asks this Court to remand for an award of benefits. "'The decision

3    whether to remand a case for additional evidence, or simply to award benefits[,] is within

4    the discretion of the court.'" *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812

5    F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain

6    and ambiguous, the court should remand to the agency for further proceedings. *Leon v.*

7    *Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that

8    additional proceedings can remedy the ALJ's errors, it should remand the case for

9    further consideration. *Revels*, 874 F.3d at 668.

10        The Ninth Circuit has developed a three-step analysis for determining when to

11    remand for a direct award of benefits. Such remand is generally proper only where

12        "(1) the record has been fully developed and further administrative
         proceedings would serve no useful purpose; (2) the ALJ has failed to
13        provide legally sufficient reasons for rejecting evidence, whether claimant
         testimony or medical opinion; and (3) if the improperly discredited
14        evidence were credited as true, the ALJ would be required to find the
         claimant disabled on remand."

15    *Trevizo*, 871 F.3d at 682–83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

16    2014)).

17        The Ninth Circuit emphasized in *Leon* that even when each element is satisfied,

18    the district court still has discretion to remand for further proceedings or for award of

19    benefits. 80 F.3d at 1045.

20        Here, as discussed above, the ALJ did not provide clear and convincing reasons

21    for discounting Claimant's or Plaintiff's testimony; nor did the ALJ provide specific and

22    legitimate reasons for discounting the opinions of Drs. Lang and Weiss, or Ms.

23    Scheuffele. The Court is mindful that, in light of Claimant's tragic death, a remand for

24

25

1   further proceedings in this case would be of limited utility, as no new testimony or

2   medical evaluations would be forthcoming, and providing another opportunity to assess

3   improperly evaluated evidence does not qualify as a remand for a "useful purpose"

4   under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, citing

5   *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to

6   decide the issue again would create an unfair 'heads we win; tails, let's play again'

7   system of disability benefits adjudication.").

8          If Claimant's and Plaintiff's testimony, and the opinions of Drs. Lang, Weiss, and

9   Ms. Scheuffele were credited as true, particularly Dr. Lang's opinion that Claimant could

10  not perform any type of sedentary work, the ALJ would be required to find Claimant

11  disabled on remand. AR 792, 868-71; *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1041

12  (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the

13  claimant's testimony as true, the ALJ would clearly be required to award benefits.").

14         Accordingly, remand for an award of benefits is the appropriate remedy.

15                                        <u>CONCLUSION</u>

16         Based on the foregoing discussion, the Court finds the ALJ erred when he

17  determined Claimant to be not disabled. Defendant's decision to deny benefits therefore

18  is REVERSED and this matter is REMANDED to the Commissioner for an award of

19  benefits.

20

21

22

23

24

25

1    Dated this 25th day of August, 2021.

2

3

4    _____
     Theresa L. Fricke
5    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 20